IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Martin Diegelman
382 Jefferson Street, Apt. 2B
Brooklyn, New York 11237

    Plaintiff

v.

Kawasaki Motors Corporation, USA
9950 Jeronimo Road
Santa Ana, California 92618

    <u>Serve On: Resident Agent</u>
    The Corporation Trust
    351 West Camden Street
    Baltimore, Maryland 21201

    and

Kawasaki Heavy Industries Ltd
Kobe Chrystal Tower
1-1-3, Higashikawasaki-cho, Chuo
KOBE-SHI   HYG  650-8680

    and

Kawasaki Motors Manufacturing Corp.
6600 Northwest 27th Street
Lincoln, Nebraska 68524

    <u>Serve On: Resident Agent</u>
    CT Corporation System
    5601 South 59th Street
    Lincoln, Nebraska 68516

    and

Pete's Cycle Company, Inc.
7511 Belair Road
Baltimore, Maryland 21236

Case No. _____

**Serve On: Resident Agent**
**Thomas W. Leach**
**7511 Belair Road**
**Baltimore, Maryland 21236**

**Defendants**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Martin Diegelman, by and through his attorneys, Gregory G. Hopper and Bekman, Marder & Adkins LLC, hereby sues Defendants, Kawasaki Heavy Industries, Limited, Kawasaki Motors Corporation, USA, Kawasaki Motors Manufacturing Corporation, and Pete's Cycle Company, Incorporated, and, in support thereof, states as follows:

1.      Plaintiff, Martin Diegelman, is a citizen and resident of the State of New York and lives in Brooklyn, New York. Mr. Diegelman is the owner of the 2011 Kawasaki KLR 650E motorcycle (VIN JKAKLEE14BDA3750) at issue in this case.

2.      Defendant, Kawasaki Motors Corporation, USA ("Kawasaki USA"), is a business entity created and existing under the laws of the State of Delaware with a principle place of business located at 9950 Jeronimo Road in Santa Ana, California 92618.

3.      At all times relevant to this cause of action, up to and including the filing of this action, Kawasaki USA, directly and by and through its agents, servants, and employees, regularly, continuously, and systematically transacted and solicited business, delivered products, performed work and services, engaged in a persistent course of conduct, and derived substantial revenue from goods, services, and manufactured products used in the State of Maryland. Kawasaki USA has distribution

agreements and continuous interactions with dealerships in the State of Maryland. It maintains databases and other computer systems that allow it to centralize, monitor, control, and respond to the sales and service needs of its dealerships and thousands of Kawasaki motorcycles in the State of Maryland. It provides post-sale information – warranty, recall, service campaign, warning, and other information – in an ongoing and continuous manner to thousands of owners of Kawasaki motorcycles in the State of Maryland. It provides ongoing and continuous training and education to its dealerships, service technicians, and other service providers in the State of Maryland. It is registered to do business with the State of Maryland and maintains a resident agent for the purpose of accepting service of process in legal matters here. And, it regularly advertises and solicits business from Kawasaki dealerships, motorcycle dealerships, customers, and others in the State of Maryland. In short, Kawasaki USA has purposefully availed itself of the privilege of conducting business in the State of Maryland and established sufficient minimum contacts with the State that it became subject to the jurisdiction of Maryland's courts and haling it into court here would comport with traditional notions of fair play and substantial justice.

4.     Defendant, Kawasaki Heavy Industries, Limited ("Kawasaki Japan"), is a business entity created and existing under the laws of the Nation of Japan with a principle place of business located at Kobe Chrystal Tower, 1-1-3, Higashikawasaki-cho, Chuo, Kobe-shi, Hyogo, Japan 650-8680.

5.     At all times relevant to this cause of action, up to and including the filing of this action, Kawasaki Japan, directly and by and through its agents, servants, and employees, regularly, continuously, and systematically transacted and solicited

business, delivered products, performed work and services, engaged in a persistent course of conduct, and derived substantial revenue from goods, services, and manufactured products used in the State of Maryland. Kawasaki Japan has distribution agreements and continuous interactions with dealerships in the State of Maryland. It maintains databases and other computer systems that allow it to centralize, monitor, control, and respond to the sales and service needs of its dealerships and thousands of Kawasaki motorcycles in the State of Maryland. It provides post-sale information – warranty, recall, service campaign, warning, and other information – in an ongoing and continuous manner to thousands of owners of Kawasaki motorcycles in the State of Maryland. It provides ongoing and continuous training and education to its dealerships, service technicians, and other service providers in the State of Maryland. And, it regularly advertises and solicits business from Kawasaki dealerships, motorcycle dealerships, customers, and others in the State of Maryland. In sum, Kawasaki Japan has purposefully availed itself of the privilege of conducting business in the State of Maryland and established sufficient minimum contacts with the State that it became subject to the jurisdiction of Maryland's courts and haling it into court here would comport with traditional notions of fair play and substantial justice.

6.     Defendant, Kawasaki Motors Manufacturing Corporation ("Kawasaki Manufacturing"), is a business entity created and existing under the laws of the State of Nebraska with a principle place of business located at 6600 Northwest 27th Street in Lincoln, Nebraska 68524. Kawasaki USA is a subsidiary and/or corporate affiliate of Kawasaki Heavy Industries Ltd. with responsibility for marketing, distributing, delivering, and selling all Kawasaki motorcycles in the United States market.

7.     At all times relevant to this cause of action, up to and including the filing of this action, Kawasaki Manufacturing, directly and by and through its agents, servants, and employees, regularly, continuously, and systematically transacted and solicited business, delivered products, performed work and services, engaged in a persistent course of conduct, and derived substantial revenue from goods, services, and manufactured products used in the State of Maryland. Kawasaki Manufacturing has distribution agreements and continuous interactions with dealerships in the State of Maryland. It maintains databases and other computer systems that allow it to centralize, monitor, control, and respond to the sales and service needs of its dealerships and thousands of Kawasaki motorcycles in the State of Maryland. It provides post-sale information – warranty, recall, service campaign, warning, and other information – in an ongoing and continuous manner to thousands of owners of Kawasaki motorcycles in the State of Maryland. It provides ongoing and continuous training and education to its dealerships, service technicians, and other service providers in the State of Maryland. And, it regularly advertises and solicits business from Kawasaki dealerships, motorcycle dealerships, customers, and others in the State of Maryland. In sum, Kawasaki Manufacturing has purposefully availed itself of the privilege of conducting business in the State of Maryland and established sufficient minimum contacts with the State that it became subject to the jurisdiction of Maryland's courts and haling it into court here would comport with traditional notions of fair play and substantial justice.

8.     Defendant, Pete's Cycle Company, Incorporated ("Pete's Cycle"), is a corporation created and existing under the laws of the State of Maryland with a principle place of business located at 7511 Belair Road in Baltimore, Maryland 21236.

9.     This Court has diversity jurisdiction in this case under 28 U.S.C. §§ 1332 and the principles of pendent and ancillary jurisdiction. Plaintiff is a citizen of the State of New York and Defendants are citizens of the Nation of Japan and States of Delaware, Maryland, and Nebraska.

10.    Venue is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1391. Pete's Cycle resides in this judicial district and all of the acts and omissions giving rise to the cause of action against it occurred in this judicial district. The Kawasaki Defendants do not reside in this judicial district; however, they regularly, continuously, and systematically transact and solicit business, deliver products, perform work and services, engage in a persistent course of conduct, and derive substantial revenue from goods, services, and manufactured products used in this judicial district and they have each purposefully availed themselves of the privilege of conducting business here and established sufficient minimum contacts with this district to be subject to suit here.

11.    Plaintiff's damages in this action exceed the minimum jurisdictional amount of $75,000 (Seventy Five Thousand Dollars).

### Facts in Common to All Counts

12.    Defendants, Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, are designers, manufacturers, assemblers, and sellers of motorcycle components and finished motorcycles.

13.    Martin Diegelman is the owner of a 2011 Kawasaki KLR 650E motorcycle, Vehicle Identification No. JKAKLEE14BDA3750 ("Mr. Diegelman's motorcycle").

14.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing designed,

manufactured, assembled, and sold Mr. Diegelman's motorcycle.

15.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing designed and manufactured most, if not all, of the components in Mr. Diegelman's motorcycle. If they obtained any components from outside sources, Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing still participated in the design and development of these components; developed and imposed design, testing, and inspection criteria and specifications on the outside manufacturers who produced the components; developed its own design, testing, and inspection protocols for the assembly of the components into finished motorcycles; and developed design, testing, and inspection protocols for its dealers and technicians who received, uncrated, assembled, prepared, and sold the finished motorcycles.

16.    One set of components Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing used in assembling Mr. Diegelman's motorcycle for distribution and sale was the front wheel assembly, a collection of components including a hub, spokes, spoke nuts or attachments, metal wheel rim, rubber rim strip, inner tube, and tire.

17.    The motorcycle rim at issue in this case was made by bending a piece of metal in a curve and welding the two ends to form a hoop or circle. The welded metal can have sharp edges, irregularities, and burrs at joint. Manufacturers like Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing Manufacturers are supposed to grind down and smooth out the welded metal at the rim joint to remove any sharp edges, irregularities, or burrs and cover the joint with a rubber strip.

18.    A wheel rim with a sharp edge, irregularity, or burr at the rim joint is unsafe, defective, and unreasonably dangerous. A sharp or irregular surface is

especially dangerous in a motorcycle that uses an inner tube because it can and will rub against, damage, and puncture an inner tube over time. If this occurs while a motorcycle is in use, it can and does lead to loss of tire air pressure, instability and loss of balance of the motorcycle, and a crash, all of which carries a substantial risk of serious bodily injury and death.

19.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or by and through their actual and apparent agents, designed, manufactured, assembled, and sold a finished motorcycle with an unsafe, defective, and unreasonably dangerous wheel rim. From the outset, the rim had a sharp edge, irregularity, and/or burr at the rim joint that posed an unreasonable risk of causing a loss of tire air pressure and crash.

20.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or by and through their actual and apparent agents, failed to identify or recognize the sharp edge, irregularity, and/or burr when the rim was manufactured and take steps to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube.

21.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or by and through their actual and apparent agents, failed to identify or recognize the sharp edge, irregularity, and/or burr prior to the assembly of the wheel assembly through proper inspections and/or quality assurance processes, a time when steps could have been taken to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube.

22.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or

by and through their actual and apparent agents, failed to identify or recognize the sharp edge, irregularity, and/or burr during the assembly of the wheel assembly through proper inspections and/or quality assurance processes, a time when steps could have been taken to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube.

23.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or by and through their actual and apparent agents, failed to identify or recognize the sharp edge, irregularity, and/or burr when the finished motorcycle was shipped, distributed, put up for sale, and sold, times when steps could have been taken to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube.

24.    And, Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or by and through their actual and apparent agents, failed to provide post-sale warnings that the wheel rim at issue had a sharp edge, irregularity, and/or burr so that steps could have been taken to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube.

25.    When Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly or by and through their actual and apparent agents, sold the subject motorcycle and it left their hands, it was in an unsafe, dangerous, and defective condition that a reasonably diligent owner or user would not be expected to be aware of or discover.

26.    When Mr. Diegelman purchased the subject motorcycle, it was in the

same unsafe, dangerous, and defective condition.

27.    Mr. Diegelman's motorcycle had repeated problems with loss of front tire pressure and inner tube failures.

28.    On April 6, 2013, the front tire on Mr. Diegelman's motorcycle lost air pressure. The motorcycle was taken to a repair shop in New York. The shop's staff inspected the tire and inner tube, and, while the tire did not have any holes or damage, the inner tube had a hole. The shop's staff replaced the inner tube.

29.    On June 28, 2013, a month and a half later, Mr. Diegelman's front tire lost air pressure again. This time, Mr. Diegelman was in Maryland and his motorcycle was taken to Pete's Cycle in Bel Air, Maryland. Pete's Cycle's actual and apparent agents, servants, and employees inspected the tire and inner tube. Again, the tire did not have any holes or damage, but the inner tube had a hole.

30.    While Pete's Cycle's agents, servants, and/or employees were looking at the motorcycle, Mr. Diegelman mentioned that the front tire had failed a month and a half earlier.

31.    Pete's Cycle's agents, servants, and/or employees did not perform any further inspection of the inner tube, front wheel rim, or any other front wheel assembly components.

32.    If Pete's Cycle's agents, servants, and/or employees had inspected the inner tube, they would have looked, felt, and/or discovered that the hole was caused by rubbing over time i near the rim joint; looked, felt, and/or discovered that the rim had a sharp edge, irregularity, or burr that made it defective; and/or otherwise identified or discovered the defect at a time and place that it could have been corrected or removed

or the rim replaced.

33.     Instead of inspecting the inner tube or tire, Pete's Cycle's agents, servants, and/or employees told Mr. Diegelman that he needed a new inner tube and indicated that it would fix the problem.

34.     Relying on the superior knowledge and skill of Pete's Cycle's agents, servants, and/or employees, Mr. Diegelman took the recommendation and Pete's Cycle replaced the inner tube without identifying, discovering, or removing the defect.

35.     On July 6, 2013, eight days after Pete's Cycle failed to identify, discover, or remove the defect, Mr. Diegelman attempted to turn his motorcycle while riding on the entrance ramp to the Mid-Hudson Bridge in Poughkeepsie, New York. He felt the front tire slump to the side due to a loss of air pressure, the motorcycle began to wobble significantly, and he crashed.

36.     The hidden defect – the sharp edge, irregularity, or burr left behind during the rim's manufacture and sale and not identified, discovered, or removed by Pete's Cycle's actual and apparent agents, servants, and/or employees – had punctured the newly installed inner tube over time, causing Mr. Diegelman's front tire to lose pressure.

37.     Mr. Diegelman struck the ground and he and his motorcycle slid across the pavement. The motorcycle struck a guardrail, damaging the front wheel, and Mr. Diegelman went under the guardrail and came to rest off the roadway.

38.     As a direct and proximate result, Mr. Diegelman suffered and will likely continue for the remainder of his life to suffer from serious and permanent bodily injuries affecting his overall physical and mental health and well-being, physical pain and mental anguish, pre-impact and post-impact fear and fright, inconvenience, physical

impairment, disfigurement, humiliation, embarrassment, and other nonpecuniary losses, and significant and costly medical bills, expenses, loss of earnings, and other economic losses.

## COUNT I
### Strict Liability – Kawasaki Defendants

39.     Plaintiff, Martin Diegelman, adopts and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40.     From the time Defendants, Kawasaki Heavy Industries, Limited, Kawasaki Motors Corporation, USA, and Kawasaki Motors Manufacturing Corporation, manufactured, assembled, and sold Mr. Diegelman's 2011 Kawasaki KLR 650E motorcycle and released it into the stream of commerce, it has been in an unsafe, defective, and unreasonably dangerous condition.

41.     Mr. Diegelman's 2011 Kawasaki KLR 650E motorcycle was unreasonably dangerous, defective, and unsafe and failed to meet consumer expectations by reason of the following design, manufacturing, assembly, and warning defects:

a.     the front wheel rim had a sharp edge, irregularity, or burr at the welded rim joint that rubbed against, damaged, and caused the failure of the front inner tube and tire while the motorcycle was being ridden and operated at speed and caused the crash on July 6, 2013;

b.     the front wheel assembly and rim were designed and manufactured in a defective condition that caused the failure of the inner tube and caused the crash on July 6, 2013;

c.     the specifications for the design, manufacture, and inspection of the front wheel assembly and rim were insufficient and defective resulting in the failure of the

inner tube and caused the crash on July 6, 2013;

d.     the instructions and warnings issued with the motorcycle were inadequate and created an unreasonable danger because they failed to warn and inform owners and users of the risk of inner tube failure due to sharp edges, irregularities, or burrs at welded rim joints;

e.     the instructions and warnings issued with the motorcycle were inadequate and created an unreasonable danger because they failed to instruct owners or users to stop riding their motorcycles and have the surface of their rims and rim joints inspected in the event of repeat or unexplained inner tube failures;

f.     the instructions and warnings issued with the motorcycle were inadequate because they failed to convey sufficient information about the dangers associated with front wheel assembly, rim, inner tube, and tire failures and instructions for owners and users so that they could avoid or reduce the risk of serious bodily injury and death; and

g.     it was otherwise unreasonably dangerous and defective.

42.     Mr. Diegelman's motorcycle was manufactured, assembled, distributed, sold, and placed into the stream of commerce by Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing and reached Mr. Diegelman without substantial change in its design or structure.

43.     The defect at issue in this case was not a type that was known, reasonably discoverable, or expected by average consumers or users like Mr. Diegelman.

44.     Mr. Diegelman did not have actual or constructive knowledge of the defect or the danger he was in as a result of the defect.

45.     The defect at issue in this case was a proximate cause of the July 8, 2013 crash and all of Mr. Diegelman's injuries and losses.

WHEREFORE, Plaintiff, Martin Diegelman, claims and demands compensatory damages in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) from Defendants, Kawasaki Heavy Industries, Limited, Kawasaki Motors Corporation, USA, and Kawasaki Motors Manufacturing Corporation, jointly and severally, plus all recoverable interest and costs.

## COUNT 2
### Negligence – Kawasaki Defendants

46.     Plaintiff, Martin Diegelman, adopts and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

47.     Defendants, Kawasaki Heavy Industries, Limited, Kawasaki Motors Corporation, USA, and Kawasaki Motors Manufacturing Corporation, owed Mr. Diegelman a duty to exercise reasonable care in the design, manufacture, assembly, and sale of his 2011 Kawasaki KLR 650E motorcycle and the components therein. They owed him a duty to properly select, instruct, monitor, oversee, and supervise outside component manufacturers to ensure that they were able to and did manufacture and deliver components free from defects that would render them unsafe, defective, and unreasonably dangerous. They owed him a duty to properly inspect any components they or anyone else manufactured before, during, and after they were assembled to form the finished motorcycle. They owed him a duty to only distribute and sell motorcycles free from any defect that would render it unsafe, defective, and unreasonably dangerous. And, they owed him a continuing post-sale duty to warn of defects or hazards that became known or knowable.

48.    Kawasaki USA, Kawasaki Japan, and Kawasaki Manufacturing, directly and by and through their actual and apparent agents, servants, and employees, breached their duties to Mr. Diegelman and were negligent, careless, and reckless in in that they:

a.    failed to exercise reasonably care in the design, manufacture, assembly, and inspection of Mr. Diegelman's motorcycle, actions and omissions that ultimately caused the crash on July 6, 2013;

b.    negligently designed, manufactured, assembled, and sold Mr. Diegelman's motorcycle with a sharp edge, irregularity, or burr at the welded rim joint that rubbed against, damaged, and caused the failure of the front inner tube and tire while the motorcycle was being ridden and operated at speed;

c.    failed to identify or recognize the sharp edge, irregularity, and/or burr when the rim was manufactured and take steps to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube;

d.    failed to identify or recognize the sharp edge, irregularity, and/or burr prior to the assembly of the wheel assembly through proper inspections and/or quality assurance processes;

e.    failed to identify or recognize the sharp edge, irregularity, and/or burr during the assembly of the wheel assembly through proper inspections and/or quality assurance processes;

f.    failed to properly select, instruct, monitor, oversee, and supervise the people and/or entities – whether inside their companies, affiliated with their companies,

or wholly independent – who manufactured and inspected front wheel assembly, wheel rim, and other components;

g.      provided insufficient and improper instructions and specifications to the people and/or entities – whether inside their companies, affiliated with their companies, or wholly independent – who manufactured and inspected front wheel assembly, wheel rim, and other components;

h.      failed to identify or recognize the sharp edge, irregularity, and/or burr when the finished motorcycle was shipped, distributed, put up for sale, and sold, times when steps could have been taken to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube;

i.      failed to provide adequate instructions and warnings to its dealers, mechanics, and users about issues, concerns, and potential hazards related to inner tube failures due to sharp edges, irregularities, or burrs at welded rim joints even though they knew or should have known that such warnings were necessary for the safe use of the product;

j.      failed to provide adequate instructions and warnings to Mr. Diegelman and other users to stop riding their motorcycles and have the surface of their rims and rim joints inspected in the event of repeat or unexplained inner tube failures;

k.      failed to provide adequate instructions and warnings to Mr. Diegelman and other users about the dangers associated with front wheel assembly, rim, inner tube, and tire failures and instructions for owners and users so that they could avoid or reduce the risk of serious bodily injury and death;

l.      failed to provide post-sale warnings that the wheel rim at issue had a sharp edge, irregularity, and/or burr so that steps could have been taken to ensure that it was properly ground down, smoothed out, removed, and/or covered so that it would not pose a danger to and cause the failure of the adjacent inner tube; and

m.      were otherwise negligent, reckless, and careless.

49.     The negligence at issue in this case was not a type that was known, reasonably discoverable, or expected by average consumers or users like Mr. Diegelman.

50.     Mr. Diegelman did not have actual or constructive knowledge of the defect or the danger he was in as a result of the defect.

51.     The negligence at issue in this case was a proximate cause of the July 6, 2013 crash and all of Mr. Diegelman's injuries and losses.

WHEREFORE, Plaintiff, Martin Diegelman, claims and demands compensatory damages in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) from Defendants, Kawasaki Heavy Industries, Limited, Kawasaki Motors Corporation, USA, and Kawasaki Motors Manufacturing Corporation, jointly and severally, plus all recoverable interest and costs.

## COUNT 3
## Negligence – Pete's Cycle

52.     Plaintiff, Martin Diegelman, adopts and incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

53.     Defendant, Pete's Cycle Company, Incorporated, directly and by and through its actual and apparent agents, servants, and/or employees, owed Mr. Diegelman a duty to exercise reasonable care in the inspection and evaluation of his

motorcycle's front wheel assembly, wheel rim, inner tube, and tire. It owed him a duty to exercise reasonable care in investigating or considering what caused the inner tube failure it was presented with. It owed him a duty to determine whether there was an unsafe, defective, or dangerous condition present when Mr. Diegelman told its agents, servants, and/or employees that the inner tube had failed less than two months earlier. And, it owed him a duty to exercise reasonable care and identify the unsafe, defective, or dangerous condition and either address it or warn him about it.

54.     Pete's Cycle Company, directly and by and through its actual and apparent agents, servants, and/or employees, breached its duties to Mr. Diegelman and was negligent, careless, and reckless in in that it:

a.     failed to identify or recognize the unsafe, defective, or dangerous condition present in the motorcycle's front wheel assembly, wheel rim, inner tube, and tire and either address it or warn him about it;

b.     failed to identify or recognize the sharp edge, irregularity, and/or burr present in the motorcycle's front wheel assembly, wheel rim, inner tube, and tire and either address it or warn him about it;

c.     failed to exercise reasonable care in the inspection and evaluation of the motorcycle's front wheel assembly, wheel rim, inner tube, and tire;

d.     failed to exercise reasonable care in investigating or considering what caused the inner tube failure when the motorcycle was brought to them;

e.     failed to warn Mr. Diegelman that its agents, servants, and/or employees had not investigated or considered what caused the inner tube failure when the motorcycle was brought to them so that he could ask them to do it or bring it to

someone else to address the issue; and

     f.     were otherwise negligent, reckless, and careless.

     55.     The negligence at issue in this case was not a type that was known, reasonably discoverable, or expected by average consumers or users like Mr. Diegelman.

     56.     Mr. Diegelman did not have actual or constructive knowledge of the defect or the danger he was in as a result of the defect.

     57.     The negligence at issue in this case was a proximate cause of the July 8, 2013 crash and all of Mr. Diegelman's injuries and losses.

     WHEREFORE, Plaintiff, Martin Diegelman, claims and demands compensatory damages in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00) from Defendants, Pete's Cycle Company, Incorporated, jointly and severally, plus all recoverable interest and costs.

     Respectfully submitted,

GREGORY G. HOPPER
BEKMAN, MARDER & ADKINS L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Martin Diegelman** | |
| **Plaintiff** | |
| **v.** | **Case No. _____** |
| **Kawasaki Motors Corporation, USA, et al.** | |
| **Defendants** | |

## DEMAND FOR JURY TRIAL

Plaintiff, Martin Diegelman, by and through his attorneys, Gregory G. Hopper and Bekman, Marder & Adkins LLC, hereby demands a jury trial on all counts and claims in the above-captioned matter.

Respectfully submitted,

_____

GREGORY G. HOPPER
BEKMAN, MARDER & ADKINS L.L.C.
300 W. Pratt Street, Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff